IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MAGIC CITY BUILDERS, INC., et al., <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 1:24-CV-3210-TWT |

## OPINION AND ORDER

This is a declaratory judgment action. It is before the Court on Plaintiffs Auto-Owners Insurance Company ("Auto-Owners Insurance") and Owners Insurance Company's ("Owners Insurance") Motion for Summary Judgment [Doc. 46], Defendants Wanda Carver and Jason Van Meter's Motion for Summary Judgment [Doc. 51], and Plaintiff Auto-Owners Insurance Company's Motion for Default Judgment [Doc. 47]. For the reasons set forth below, Plaintiffs Auto-Owners Insurance and Owners Insurance's Motion for Summary Judgment [Doc. 46] is DENIED, and Defendants Carver and Van Meter's Motion for Motion for Summary Judgment [Doc. 51] is GRANTED. Plaintiff Auto-Owners Insurance's Motion for Default Judgment [Doc. 47] is also DENIED.

## I. Background[1]

In July 2022, Charles Ricky Carver fell from a ladder while working as an electrician on a construction site in Jonesboro, Georgia. (Pls.' Statement of Undisputed Material Facts ¶ 1 [Doc. 46-2].) Carver subsequently died from his injuries. (*Id.* ¶ 2.) Following the incident, Wanda Carver and Jason Van Meter—individually and as administrators of Charles Ricky Carver's estate—filed a suit in Georgia state court against Lusk & Company, Inc. ("Lusk"), Magic City Builders, Inc. ("Magic City"), and Nelson Vegas. (Defs. Carver & Van Meters's Statement of Undisputed Material Facts ¶ 2 [Doc. 51-2].) Lusk was the general contractor in charge of the construction site. (*Id.* ¶ 6.) It had hired Carver's employer (DYCO Enterprises, LLC) for electrical work and Magic City for wood-framing work. (*See id.*) Magic City hired Vegas for the wood-framing work. (*Id.* ¶ 7.)

Plaintiffs Owners Insurance Company and Auto-Owners Insurance Company insured Magic City and Lusk at the time of the incident and seek a judgment declaring that Magic City's and Lusk's failure to provide timely notice of the incident bars coverage. The Amended Complaint names Magic City, Lusk, Vegas, Wanda Carver, and Jason Van Meter as Defendants. The

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

Court now considers the parties' cross-motions for summary judgment as well as Auto-Owners Insurance's Motion for Default Judgment as to Defendant Vegas.

Magic City notified the Plaintiffs of the July 2022 incident in April 2024, on the day it received a summons for the action for wrongful death of Charles Ricky Carver. (Pls.' Statement of Undisputed Material Facts ¶ 6.) In their competing summary judgment motions, the parties dispute (1) whether Magic City's notice was timely and (2) whether untimely notice would preclude insurance coverage altogether.

Two insurance policies relevant to the summary judgment motions are: (1) the "Tailored Protection Policy" and (2) the "Umbrella Policy." (Pls.' Statement of Undisputed Material Facts ¶¶ 15, 19.) The policies were issued to Magic City, but Lusk is listed as an "additional insured" with respect to "bodily injury" caused by Magic City's "work." (Def. Lusk's Statement of Further Material Facts ¶¶ 1–2 [Doc. 58-3]; Defs. Carver & Van Meters's Statement of Undisputed Material Facts ¶ 39.) The policies cover court-ordered damages that Magic City or Lusk may incur due to "bodily injury" caused by an "occurrence." (Pls.' Mot. for Summ. J., Ex. H ("Tailored Protection Policy"),[2] at 75 [Doc. 46-10]; Pls.' Mot. for Summ. J., Ex. I ("Umbrella Policy"),[3]

---

[2] The pagination of Exhibit H reflects the PDF pagination.
[3] The pagination of Exhibit I reflects the PDF pagination.

at 17–18 [Doc. 46-11].) And both policies contain a notice provision. The Tailored Protection Policy provides: "You must see to it that we are notified as soon as practicable of an 'occurrence,' or an offense, which may result in a claim." (Tailored Protection Policy, at 84.) The Umbrella Policy provides: "When an incident likely to involve us takes place, the insured must notify us in writing as soon as practicable, of any incident, claim, or suit." (Umbrella Policy, at 30.) There is no dispute that the July 2022 incident qualifies as an "occurrence" under both policies.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A defendant who fails to appear, plead, or otherwise defend in a suit may be subject to an entry of default under Rule 55(a) and ultimately default judgment under Rule 55(b). Fed. R. Civ. P. 55(a)–(b). "A defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citation modified). Once the clerk has entered a party's default, any other party may then move for default judgment. *Carrier v. Jordaan*, 746 F. Supp. 2d 1341, 1345–46 (S.D. Ga. 2010). Default judgment is appropriate "when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). This standard is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.*

### III.  Discussion

A. Motions for Summary Judgment[4]

1. Did the Insured Provide Timely Notice?

The Plaintiffs argue that the notice provisions in the Tailored Protection Policy and Umbrella Policy required Magic City (and Lusk) to timely notify the

---

[4] The parties agree that Georgia law applies to the insurance coverage issues in this case, based on the doctrine of *lex loci contractus*. Accordingly, the Court applies Georgia law. *See Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998).

Plaintiffs of the incident upon learning of it as opposed to learning of the lawsuit. They assert that Magic City and Lusk should have known that Carver's work-related death would trigger the notice provisions in the Tailored Protection Policy and Umbrella Policy. (Reply Br. in Supp. of Pls.' Mot. for Summ. J., at 7–8 [Doc. 62].) According to the Plaintiffs, Magic City's president and Lusk's vice president were aware of the incident the day it occurred and aware of Carver's passing within a few weeks of that day. (Br. in Supp. of Pls.' Mot. for Summ. J., at 3–4 [Doc. 46-1].) The U.S. Occupational Safety and Health Administration ("OSHA") also interviewed both officers about Carver's death in July 2022 and ultimately issued a citation and penalty to Lusk in January 2023. (*Id.* at 4.) The Plaintiffs argue that—beyond Magic City and Lusk's involvement in OSHA's investigation—the two Defendant companies should have known about their potential liability for the incident for two additional reasons: (1) Magic City knew that the ladder from which Carver fell allegedly belonged to its subcontractor, Nelson Vegas, and (2) Lusk was the general contractor at the job site. (Reply Br. in Supp. of Pls.' Mot. for Summ. J., at 11.)

In response, the Defendants argue that Magic City and Lusk had no reason to know that they would be drawn into litigation over the incident and thus had no reason to notify the Plaintiffs at the time of the incident. (Defs. Carver & Van Meters's Resp. Br. to Pls.' Mot. for Summ. J., at 8–9 [Doc. 52].)

6

They explain that not every on-site injury will require notice and that this incident was one such case. (Br. in Supp. of Def. Carver & Van Meters's Mot. for Summ. J., at 11 (quoting *Newberry v. Cotton States Mut. Ins. Co.*, 242 Ga. App. 784, 785 (2000)).) They also explain that the insurance policies merely require notification if an occurrence "may result in a claim," (Tailored Protection Policy, at 84), or is "likely to involve" the insurance companies, (*see* Umbrella Policy, at 30). According to the Defendants, Magic City's president had only "second-hand information that the ladder was brought on site by someone associated with Vegas's crew" and that "Carver's group took the ladder to use [ ] without permission." (Reply Br. in Supp. of Def. Carver & Van Meters's Mot. for Summ. J., at 5 [Doc. 66]; *see also* Def. Carver & Van Meters's Statement of Undisputed Material Facts ¶¶ 20–22; Pls.' Resp. to Defs. Carver & Van Meters's Statement of Undisputed Material Facts ¶ 22 [Doc. 60] (denying that "Carver took the ladder without permission," but agreeing that that "neither Magic City nor its subcontractors authorized its use").) They further argue that "there was no evidence that the ladder itself failed or was defective." (Reply Br. in Supp. of Def. Carver & Van Meters's Mot. for Summ. J., at 5.) Additionally, the Defendants argue that there was no indication that Carver's family or estate planned to file suit. (Defs. Carver & Van Meters's Resp. Br. to Pls.' Mot. for Summ. J., at 12–13.)

The Georgia Court of Appeals has stated, "if a reasonable and ordinarily prudent person would conclude that an event forms no basis for a possible claim, the failure of the insured to give notice of the event is justified and no bar to coverage." *Forshee v. Emps. Mut. Cas. Co.*, 309 Ga. App. 621, 623–24 (2011) (citing *Guar. Nat'l Ins. Co. v. Brock*, 222 Ga. App. 294, 295 (1996)). "In most cases, [ ] the reasonableness of a failure to give notice is a question for the finder of fact." *Id.* at 624 (citing *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 25 (2000)). But sometimes failure to give notice may be "reasonable or unreasonable as a matter of law." *SiaSim Columbia, LLC v. Scottsdale Ins. Co.*, 2022 WL 2352323, at *3 (11th Cir. June 29, 2022) (applying Georgia law). For example, "sometimes," an incident may be "so trivial or inconsequential that a court properly may conclude as a matter of law that no reasonable person would think that a claim could arise from the event, and therefore, that no notice of the event is required." *Forshee*, 309 Ga. App. at 624. And sometimes the opposite may be true. *See Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments*, 861 F. App'x 270, 277–78 (11th Cir. 2021) (affirming the district court's order granting summary judgment to the insurers on a similar notice and coverage issue).

Until it was served with the underlying lawsuit, Magic City had no reason to expect that a claim would be made against it or its insurance companies. "An insured is not required to foresee every possible claim, no

8

matter how remote, that could have arisen from an accident. Rather, the insured is only required to act reasonably under the circumstances." *JNJ Found. Specialists, Inc. v. D.R. Horton, Inc.,* 311 Ga. App. 269, 274 (2011). The underlying lawsuit alleges that Mr. Carver died after falling from a ladder and landing on his head. The allegation is not that the ladder was defective in some way, but rather that it was placed on a slippery surface and the ladder slid out from underneath Mr. Carver. Magic City did not own the ladder that Carver was using at the time of his fall. More importantly, at the time of Mr. Carver's fall, Magic City was not performing any work at the jobsite and, in fact, none of its employees or contractors were present at the jobsite. The accident was later investigated by OSHA. With regard to Magic City, OSHA was only concerned about finding out who the ladder belonged to. Magic City was never cited by OSHA and it believed that once the OSHA investigation was concluded, the matter was over. Prior to the filing of the underlying lawsuit, Magic City had no notice that it was going to be sued for Mr. Carver's fall. *See Forshee*, 309 Ga. App. at 623–24. As soon as Magic City was served with the underlying lawsuit, it called its insurance agent and reported it. "[A] trial court must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct of the insured from the perspective of a reasonable person in the same circumstances as those in which the insured found himself." *Id.* at 624. Here, Magic City acted reasonably under the circumstances.

9

## 2. Is Notice a Condition Precedent to Coverage?

The Defendants argue that even if Magic City did not provide the Plaintiffs with timely notice of the possibility of a claim, the notice provisions are not conditions precedent to coverage and the Plaintiffs must show prejudice. The Court begins with a review of the relevant provisions. The Tailored Protection Plan contains the following notice provision: "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Tailored Protection Policy, at 84.) The Umbrella Policy provides: "When an incident likely to involve us takes place, the insured must notify us in writing as soon as practicable, of any incident, claim or suit." (Umbrella Policy, at 30.) Both polices additionally include "no action" provisions. The Tailored Protection Policy provides: "No person or organization has a right. . . [t]o sue us . . . unless all of [the Policy's] terms have been fully complied with." (Tailored Protection Plan, at 84.) The Umbrella Policy provides: "We may not be sued unless . . . [t]here is full compliance with all the terms of this policy." (Umbrella Policy, at 29.)

"As a general rule, a notice provision in an insurance policy is not considered a condition precedent unless it expressly states that a failure to provide such notice will result in forfeiture of the insured's rights or 'uses language which otherwise clearly expresses the intention that the notice provision be treated as a condition precedent." *Res. Life Ins. Co. v. Buckner*,

10

304 Ga. App. 719, 726–27 (2010) (quoting 13 Couch on Insurance § 186:42 (3d ed. 2005)); *see also Eells v. State Farm Mut. Auto. Ins. Co.*, 324 Ga. App. 901, 903 (2013) ("[A] notice provision expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification." (citations omitted)). But determining whether a notice provision is a condition precedent is not such a simple task. Courts applying Georgia law appear to point in opposite directions. The Court attempts to untangle prior precedent by organizing it into two questions: (1) is the notice provision, by its language alone, sufficient to establish a condition precedent, and (2) does the general "no action" clause establish notice as a condition precedent?

### a. Does the Notice Clause Alone Establish a Condition Precedent?

The parties point to conflicting case law on whether the notice provisions make notice a condition precedent to coverage. Several cases are relevant to the Plaintiffs' position that the language of the notice provisions "is sufficient, by itself, to state a valid condition precedent to coverage." (Reply Br. in Supp. of Pls.' Mot. for Summ. J., at 3.) The Plaintiffs cite in their briefs two Georgia Court of Appeals cases that considered notice provisions identical to the notice provision in Magic City's Tailored Protection. *See Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484, 488 (2007) (involving language that the insured "must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim"); *Forshee*, 309 Ga. App. at 622–23 (same).

11

In *Kay-Lex*, the Georgia Court of Appeals treated the notice provision as a condition precedent and found that the insured's one-year delay, without justification, was unreasonable as a matter of law. 286 Ga. App. at 489. Similarly, the *Forshee* court treated identical language, without more, as a condition precedent. 309 Ga. App. at 622–23 (involving language that the insured "must see to it that [the insurer] [is] notified as soon as practicable of an 'occurrence' or an offense that may result in a claim").

The Court is also aware of an unpublished Eleventh Circuit opinion that addressed this exact topic in *State Farm Fire & Casualty Co. v. LeBlanc*, 494 F. App'x 17 (11th Cir. 2012). There, the Eleventh Circuit considered notice provisions in two business insurance policies.[5] *Id.* at 20. Those provisions contained notice language similar to that of Magic City's policies: "If a claim is made or suit is brought against any insured, you must see to it that we receive prompt written notice of the claim or suit." *Id.* And they were located in the "General Conditions" section and "Duties in the Event of Occurrence, Claim or Suit" subsection of each policy, *LeBlanc*, 494 F. App'x at 20, as is the case with the present policies. Citing *Kay-Lex* and *Forshee*, the Eleventh Circuit first

---

[5] The Eleventh Circuit referenced a separate umbrella policy as well, but the terms of that policy were sufficiently distinct as to not be relevant to the present analysis. There, notice for the umbrella policy was clearly a condition precedent because the policy contained a provision expressly stating that the insurer "may not provide coverage if [the insured] refuse[s] to . . . notify [the insurer] of a claim or suit." *LeBlanc*, 494 F. App'x at 20.

stated that "Georgia courts have treated similar mandatory language—'you must see to it'—without more, as conditions precedent." *Id.* at 21. The court then reasoned that the section headings of the notice provisions further supported the existence of a condition precedent. *Id.* According to *LeBlanc*, these factors "clearly express[ed] the intention that the notice provisions be treated as conditions precedent to coverage." *Id.* At least two district court opinions apply *LeBlanc*'s reasoning to reach the same holding. *See Mt. Hawley Ins. Co. v. AIKG, LLC*, 2019 WL 3526506, at *6–7 (N.D. Ga. July 29, 2019) (involving identical notice language to that in Magic City's Tailored Protection Policy); *Allstate Ins. Co. v. Airport Mini Mall, LLC*, 265 F. Supp. 3d 1356, 1377 (N.D. Ga. 2017) ("Georgia courts have repeatedly held that a notice provision such as the one in Allstate's Policies [which is identical to that in Magic City's Tailored Protection Policy] is a condition precedent to coverage.").

The Defendants point to a separate line of cases holding the opposite. As Magic City explains, the Georgia Court of Appeals plainly concluded that, "where policy language does nothing more than require the insured to give notice of a particular event, it is insufficient to create a condition precedent." *Plantation Pipe Line Co. v. Stonewall Ins. Co.*, 335 Ga. App. 302, 312 (2015) (citation modified) (quoting *Res. Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 727 (2010)). This proposition is traceable to a line of older insurance cases that held that violating an insurance provision cannot cause forfeiture of coverage

13

unless coverage is expressly conditioned on compliance *with that particular provision*—i.e., the mere requirement that the insured provide certain notice is not sufficient to establish a condition precedent. *Parris v. Great Cent. Ins. Co.*, 148 Ga. App. 277, 277–78 (1978) (holding that proof-of-loss provisions were not conditions precedent to coverage because, although the insurance policies required proof of loss within a certain timeframe, they did not specifically state that timely proof was a condition of coverage); *Progressive Mut. Ins. Co. v. Burrell Motors, Inc.*, 112 Ga. App. 88, 88 (1965) (same); *Canal Ins. Co. v. Savannah Bank & Tr. Co.*, 181 Ga. App. 520, 521 (1987) (same). These courts required provision-specific conditional language based on the principle that "[f]orfeitures are not favored by the law." *See, e.g.*, *Burrell*, 112 Ga. App. at 88.

Based on the case law presented by the parties, the Court is persuaded that the Defendants' case law is the better reading. For one, the Plaintiffs' *Kay-Lex* and *Forshee* cases offer almost no explanation as to *why* the notice provisions in those cases were sufficient by themselves to create conditions precedent. Although the cases acknowledge that a condition precedent is only created by express language, they seem to jump to the conclusion—from the notice language itself—that a condition precedent has been expressly created. Second, the Eleventh Circuit's *LeBlanc* decision relied on *Kay-Lex*'s and *Forshee*'s apparent presumptions without scrutinizing case law pointing in the other direction and, as an unpublished decision, it does not bind this Court in

14

any case. Third, and in contrast, the Defendants' cases identify the express intention standard but explain that the mere requirement of notice does not by itself expressly establish a condition precedent. Those cases are based on long-standing principles of insurance contract construction—espoused to this day by Georgia's Supreme Court—that Georgia "do[es] not favor forfeitures in construing insurance contracts." *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407 (2012) (citation omitted). Fourth, the Court is persuaded that the Plaintiffs' logic would "turn essentially *every* notice provision into a condition precedent" to coverage, (Br. in Supp. of Def. Carver & Van Meters's Mot. for Summ. J., at 16), which does not appear to be the law in Georgia. Therefore, the present policies' mere requirements for notice in their general "conditions" sections are not sufficient by themselves to create a condition precedent.

### b. Does the "No Action" Clause Make Notice a Condition Precedent?

Having determined that the notice provisions are not conditions precedent when read on their own, the Court next turns to whether the policies' "no action" clause independently establishes notice as a condition precedent. The Court holds that it does not. An ordinary "no action" clause prohibits suits against the insurer unless the insured complies with each term in a given policy, and that is exactly what the "no action" clause in the present policies do.

15

According to the Defendants, the "no action" clause in the Tailored Protection Policy and Umbrella Policy does not create a condition precedent for the notice provision, based on several Georgia Court of Appeals cases that expressly held that a generic "no action" provision cannot establish a condition precedent. (Br. in Supp. of Def. Carver & Van Meters's Mot. for Summ. J., at 22.) The Court agrees that a line of Georgia Court of Appeals cases from the 1960s and 1970s does expressly hold as much, based on the idea that a condition precedent must be made express before forfeiture will result. *See Parris*, 148 Ga. App. at 277–78; *Burrell*, 112 Ga. App. at 88. As far as the Court is aware, the same proposition and reasoning appear in more recent Georgia Court of Appeals cases from 1998 and 2001 as well as Georgia Supreme Court cases from the early twentieth century. *See Cotton States Mut. Ins. Co. v. Walker*, 232 Ga. App. 41, 42 (1998); *Gilbert v. S. Tr. Ins. Co.*, 252 Ga. App. 109, 111 (2001) (quoting *Walker*, 232 Ga. App. 41); *Harp v. Fireman's Fund Ins. Co.*, 61 S.E. 704, 705 (Ga. 1908); *S. Fire Ins. Co. v. Knight*, 36 S.E. 821, 821–22 (Ga. 1900); *Columbian Nat'l Life Ins. Co. v. Miller*, 78 S.E. 1079, 1082 (Ga. 1913). While acknowledging the age of these cases, a court in this district remarked that "they remain good law" and "have never been overruled." *Fed. Dist. Ins. Corp. v. Cincinnati Ins. Cos.*, 2012 WL 12861602, at *3 n.2 (N.D. Ga. May 7, 2012).

The Plaintiffs point to cases that hold the opposite. (Reply Br. in Supp. of Pls.' Mot. for Summ. J., at 3–5.) The Plaintiffs rely specifically on *Lankford v. State Farm Mutual Automobile Insurance Co.*, 307 Ga. App. 12 (2010), and *Progressive Mountain Insurance Co. v. Bishop*, 338 Ga. App. 115 (2016). In *Lankford*, the Georgia Court of Appeals concluded that "failure to provide the requisite notice could result in a forfeiture" based on the "as soon as reasonably possible" language in the notice provision and the "no action" clause. 307 Ga. App. at 14; *see also id.* (noting that. in another case, "notice became [a] condition precedent under [a] general provision that compliance with [the] policy terms was required for coverage" (citing *Federated Mut. Ins. Co. v. Ownbey Enters.*, 278 Ga. App. 1, 5 (2006)). *Lankford* referenced both *Walker* and *Gilbert*—two of the Defendants cases. *Id.* at 14 n.1. The Plaintiffs argue that *Lankford* took care to distinguish its facts from those in the *Walker* and *Gilbert* cases that the Defendants cite. (Reply Br. in Supp. of Pls.' Mot. for Summ. J., at 4–5.) *Lankford* noted that it was "undisputed that [the] insured was notified of [the] fact of loss" in both *Gilbert* and *Walker*. *Lankford*, 307 Ga. App. at 14 n.1; (Reply Br. in Supp. of Pls.' Mot. for Summ. J., at 4–5.)

In *Bishop*, the Georgia Court of Appeals, relying in part on *Lankford*, plainly stated that "[a] general provision that no action will lie against the insurer unless the insured has fully complied with the terms of the policy will suffice to create a condition precedent." 338 Ga. App. at 118. In addition to

17

citing *Lankford*, the *Bishop* court cited *Plantation Pipe Line Co.* In *Plantation Pipe Line*, the insurance policy at issue did not include a "no action" clause, but the Georgia Court of Appeals noted in dicta that other courts have held "no action" clauses as sufficient to establish a condition precedent. 335 Ga. App. at 312 & n.14 (first citing *Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc.*, 132 Ga. App. 714, 716–18 (1974); then citing *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 560 (1970); and then citing *OneBeacon Am. Ins. Co. v. Catholic Diocese of Savannah*, 477 F. App'x 665, 668 (11th Cir. 2012)).

At the outset, the Court notes that the case law on this topic is quite muddled and often contradictory. That being said, the Court finds for the Defendants on this issue based on the unbroken line of older Georgia Supreme Court precedent holding that a generic "no action" clause will not create a condition precedent for individual provisions in the policy. Although these cases are old, Georgia courts continue to cite them—as recently as 1998 in *Walker* and 2001 in *Gilbert*. And the Court is aware of no case that has expressly challenged or overruled those Georgia Supreme Court cases.

Moreover, the Plaintiffs' *Lankford* and *Bishop* cases appear to rest their conclusions on prior cases that do not appear to be traceable to Georgia Supreme Court precedent and that provide little to no analysis on this specific issue. For example, *Federated Mutual Insurance Co.* and *Plantation Pipe Line* do not appear to include a "no action" clause. In *OneBeacon America Insurance*

18

*Co.*, "it [was] undisputed that the relevant notice provisions were expressly made conditions precedent to coverage." 477 F. App'x at 671. And the courts in *Bituminous Casualty Corp.* and *Wolverine Insurance Co.* appear to have merely concluded that notice was a condition precedent based on the notice language and "no action" clause, without further citation or analysis.

Lastly, insurance companies have shown that they can create broad yet express condition precedents, as was the case in *LeBlanc* (and other cases) where one of the policies specifically provided that the insurer had the right to refuse coverage if the insured failed to, among other things, "notify [the insurer] of a claim or suit." *LeBlanc*, 494 F. App'x at 20. Yet the Plaintiffs in this instance did not make notice an express condition precedent. For these reasons, the Court grants the Defendants' Motion for Summary Judgment and denies the Plaintiffs' Motion for Summary Judgment. Magic City's failure to provide timely notice does not preclude insurance coverage, and the Defendants are entitled to judgment as a matter of law on the issue.

### B. Motion for Default Judgment

Defendant Nelson Vegas has not made any appearance in this case to date. Plaintiffs Owners Insurance and Auto-Owners Insurance have previously moved for a clerk's entry of default as to Vegas [Doc. 26], and the clerk subsequently entered Vegas's default. Having found no "sufficient basis in the pleadings for the judgment entered," *see Surtain*, 789 F.3d at 1245, the Court

denies the Plaintiffs' Motion for Default Judgment against Defendant Vegas.

### IV.   Conclusion

For the reasons set forth above, Plaintiffs Auto-Owners Insurance and Owners Insurance's Motion for Summary Judgment [Doc. 46] is DENIED. Defendants Carver and Van Meter's Motion for Motion for Summary Judgment [Doc. 51] is GRANTED. Plaintiff Auto-Owners Insurance's Motion for Default Judgment [Doc. 47] is DENIED.

SO ORDERED, this   25th   day of November, 2025.

*/s/ Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge